IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOLIET AVIONICS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 19 C 8507 |
| | ) |
| LUMANAIR, INC. and CITY OF AURORA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Joliet Avionics and Lumanair, Inc. both operate aviation businesses at the Aurora Airport, which is owned by the City of Aurora. Joliet Avionics has sued Lumanair and the City, asserting claims largely based on Lumanair's failure to comply with, and the City's failure to enforce, regulations that the City has enforced against Joliet Avionics. The City and Lumanair have each moved to dismiss the claims against them.

### Background

The following is based on the allegations in Joliet Avionics's complaint, which the Court accepts as true for the purposes of this motion. *See O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 621 (7th Cir. 2020). Joliet Avionics and Lumanair, Inc. sell fuel, rent out hangar space and airplanes, and offer other flight-related services at the Aurora Airport, owned by the City of Aurora. Joliet Avionics operates its business on land at the airport under the terms of a lease with the City. Lumanair operates its business on land that is contiguous with the land leased by Joliet Avionics. Lumanair's

lease with the City expired in February 2019, and it has not paid any rent to the City since then.

Joliet Avionics and Lumanair are both subject to the City's "Minimum Standards" regulations. These regulations require fuel to be stored in above-ground tanks and require the businesses to maintain environmental insurance. The Minimum Standards also prohibit "co-oping fuel," a practice not defined in the complaint.

Joliet Avionics alleges that the City "enforc[ed] the Minimum Standards in regard to JA [Joliet Avionics]" but "has failed and continues to fail to enforce [them] in regard to Lumanair." Compl. ¶ 29. Joliet Avionics says it invested millions of dollars to build above-ground fuel tanks, purchase environmental insurance, and take other actions to comply with the Minimum Standards. Additionally, it has refrained from co-oping fuel. By contrast, Lumanair continues to store fuel in underground tanks, co-ops fuel, and does not have environmental insurance. Despite this, the City permits Lumanair to continue to run its business at the airport.

Joliet Avionics also alleges that the City allows Lumanair to operate its business at the airport without paying rent and without a valid lease for the land it uses. Joliet Avionics alleges that this treatment is unfair because it pays rent for airport land under a lease with the City.

In November 2019, Joliet Avionics sued Lumanair and the City in Illinois state court. It asserted four claims against Lumanair: private nuisance (count 1), tortious interference with business expectancy (count 3), unfair competition (count 4), and violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 (count 5). It also asserted a claim against the City under 42 U.S.C. § 1983, alleging that its

2

unequal treatment of Lumanair and Joliet Avionics violates the Equal Protection Clause of the Fourteenth Amendment. In December 2019, the case was removed to federal court. Lumanair and the City have moved to dismiss all of the claims in Joliet Avionics's complaint.

## Discussion

### A. Lumanair's motion

Lumanair has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all of Joliet Avionics's claims for failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state a claim for relief that is "plausible on its face." *O'Brien*, 955 F.3d at 622 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In ruling on this motion, the Court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the non-moving party. *O'Brien*, 955 F.3d at 621.

### 1. Tortious interference, deceptive trade practices, and unfair competition claims

Counts 3, 4, and 5 are based on the same actions by Lumanair. It has moved to dismiss all three claims, arguing that none of its alleged misconduct is actionable.

Count 3 alleges tortious interference with Joliet Avionics's business expectancy caused by Lumanair's failure to comply with the Minimum Standards and making false statements to Joliet Avionics's customers. Under Illinois law, tortious interference with business expectancy has four elements: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an

3

intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007) (applying Illinois law) (quoting *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 300-301, 751 N.E.2d 1126, 1133–34 (2001)). Lumanair argues that Joliet Avionics's claim falls short on the third element.

First, Lumanair contends that its noncompliance with the Minimum Standards is not actionable interference with Joliet Avionics's business expectancy, because this is not conduct directed to Joliet Avionics's customers. The Court agrees. Under Illinois law, a plaintiff states a tortious interference claim "only if he alleges a business expectancy with a specific third party" and "action by the defendant directed towards that third party." *Ali v. Shaw*, 481 F.3d 942, 946 (7th Cir. 2007) (applying Illinois law) (quoting *Associated Underwriters of Am. Agency, Inc. v. McCarthy*, 356 Ill. App. 3d 1010, 1020, 826 N.E.2d 1160, 1169 (2005)). Joliet Avionics's tortious interference claim is based on a business expectancy with its customers, but Lumanair's noncompliance with the Minimum Standards was conduct directed to the City—the entity that imposes and enforces those regulations—not customers. Thus, Lumanair's noncompliance is not actionable as tortious interference with Joliet Avionics's business expectancy.

Joliet Avionics contends that Lumanair's noncompliance with the Minimum Standards was directed to customers because it enabled Lumanair to offer lower prices for goods and services similar to those offered by Joliet Avionics. Although lower prices may have been an effect of Lumanair's noncompliance with the Minimum Standards, lowering one's prices does not by itself amount to actionable unjustified conduct. The

4

unjustified conduct alleged in this case is the noncompliance, which was directed toward the City, not Joliet Avionics's customers, as required to state a claim. *See Ali*, 481 F.3d at 946; *Du Page Aviation Corp. v. Du Page Airport Auth.*, 229 Ill. App. 3d 793, 804, 594 N.E.2d 1334, 1341 (1992). In *Du Page Aviation Corp.*, for example, an Illinois appellate court affirmed dismissal of a business's tortious interference claim against an airport for declining to renew its lease. *Du Page Aviation Corp.*, 229 Ill. App. 3d at 804, 594 N.E.2d at 1340-41. The court explained that although an effect of the non-renewal of the lease was that the plaintiff could no longer continue doing business at the airport, this was not actionable tortious interference because the defendant's actions were not directed to the business's customers. *Id.*

Lumanair also argues that the allegations relating to false statements to Joliet Avionics customers are insufficient to support a tortious interference claim. Joliet Avionics alleges that Lumanair interfered with its business expectancy by telling customers that Joliet Avionics was about to go out of business.

Preliminarily, the Court must identify the appropriate pleading standard for allegations of this conduct by Lumanair. A claim that "is premised on a course of fraudulent conduct" is subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires a plaintiff "state with particularity the circumstances constituting fraud." *Borsellino*, 477 F.3d at 507. A court must look to the factual allegations to determine whether a plaintiff's claim "sounds in fraud" and is therefore subject to Rule 9(b). *Id.* Joliet Avionics's allegations that Lumanair made false statements that Joliet Avionics was going out of business in order to induce customers to do business with Lumanair instead "sound in fraud" and are therefore subject to the

5

Rule 9(b) standard.

To satisfy Rule 9(b), a plaintiff must allege the "who, what, when, where, and how" of the fraud. *Id.* Here the complaint lacks any factual allegations regarding the circumstances under which Lumanair is claimed to have told customers that Joliet Avionics was going out of business. Specifically, Joliet Avionics has not identified any customers to whom such statements were made, when the statements were made, or by what means. As currently pleaded, Joliet Avionics's allegations do not satisfy Rule 9(b)'s requirements.

For these reasons, the Court dismisses count 3 of the complaint.

Lumanair argues that the Court should likewise dismiss the unfair competition claim, because it is based on the same inactionable conduct underlying count 3. Joliet Avionics does not dispute this point. The Court dismisses count 4.

Finally, the Court also dismisses count 5, the deceptive business practices claim based on Lumanair's alleged false statements, for noncompliance with Rule 9(b).

**2. Nuisance claim**

Finally, Lumanair has moved to dismiss count 1, which is styled as a request for a preliminary injunction, arguing that the allegations underlying this count do not state a claim for relief. Joliet Avionics argues that it has alleged a plausible claim for trespass, private nuisance, and public nuisance.

The Court finds that the allegations underlying count 1 are sufficient to state a plausible private nuisance claim. Under Illinois law, private nuisance is "a substantial invasion of another's interest in the use and enjoyment of his or her land." *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 204, 680 N.E.2d 265, 277 (1997). Joliet Avionics

has alleged that leakage from Lumanair's fuel tanks has contaminated the land it leases at the airport, which is contiguous with the land on which Lumanair operates its business. These allegations are sufficient to state a plausible claim that Lumanair has substantially invaded Joliet Avionics's interest in the use of its airport land.

The Court denies Lumanair's motion to dismiss count 1.

**B.  The City's motion**

Count 2 is a claim under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that the City violated Joliet Avionics's rights under the Equal Protection Clause of the Fourteenth Amendment. The City has moved to dismiss this claim, arguing that it is not timely, is not ripe for review, and otherwise fails to state a claim. The Court will address each of these arguments in turn.

**1.  Timeliness**

"An action under 42 U.S.C. § 1983 must be brought within the statute of limitations for personal injuries supplied by the state in which the claim arose." *Huber v. Anderson*, 909 F.3d 201, 207 (7th Cir. 2018). "Under Illinois law, a plaintiff has two years to bring a § 1983 claim." *Brown v. Dart*, 876 F.3d 939, 940 (7th Cir. 2017). Accrual of a section 1983 claim, however, is governed by federal law. *Id.*

The City argues that Joliet Avionics's claim is untimely because it is based on the City's efforts, in July 2014, to enforce the Minimum Standards against Joliet Avionics and Lumanair. Thus, the City argues, Joliet Avionics had until July 2016 to bring its section 1983 claim, and its suit is time-barred because it did not sue until November 2019.

The City's argument mischaracterizes Joliet Avionics's claim, which is not based narrowly on the City's July 2014 enforcement activities. Rather, Joliet Avionics has alleged a continuing violation of its rights by the City's claimed policy of allowing Lumanair to violate the Minimum Standards and operate rent-free at the airport since February 2019. "The continuing violation doctrine is applicable when the state actor has a policy or practice that brings with it a fresh violation each day," *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018), and every violation restarts the limitations period for bringing a section 1983 claim, *see Groesch v. City of Springfield*, 635 F.3d 1020, 1027 (7th Cir. 2011). Each day the City allowed Lumanair to continue doing business without paying rent or complying with the Minimum Standards, there was a new claimed violation of Joliet Avionics's Fourteenth Amendment rights. Joliet Avionics contends that this preferential treatment of Lumanair was ongoing at the time it filed suit in November 2019. Thus, its section 1983 claim for a continuing violation by the City was timely.

**2.     Ripeness**

The City argues that Joliet Avionics's section 1983 claim is "not ripe" because it has a dispute pending before the Federal Aviation Administration. The City cites section 704 of the federal Administrative Procedures Act, which limits judicial review to "final agency action[s]." 5 U.S.C. § 704. But Joliet Avionics's section 1983 claim does not challenge an action of the Federal Aviation Administration—rather, it concerns the City's unequal treatment of businesses at the Aurora Airport. The City's "ripeness" argument lacks merit.

### 3. Failure to state a claim

Finally, the City has argues that the section 1983 it is based only on conclusory allegations that do not support a reasonable inference of any constitutional violation by the City. Joliet Avionics responds that its allegations are sufficient to raise a plausible "class of one" equal protection claim. The Court agrees.

To state an equal protection claim under a class-of-one theory, a plaintiff's allegations must support a reasonable inference that "it was intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Black Earth Meat Mkt., LLC v. Village of Black Earth*, 834 F.3d 841, 851 (7th Cir. 2016) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Joliet Avionics has alleged that the City intentionally treated it differently from Lumanair, a similarly situated entity, without a rational basis for doing so. Specifically, Joliet Avionics alleges, the City enforced its Minimum Standards against Joliet Avionics while permitting Lumanair to violate these same standards by, for example, continuing use of underground fuel storage, operating without environmental insurance, and co-oping fuel. Additionally, Joliet Avionics alleges that the City has permitted Lumanair to run its business at the airport without paying rent or maintaining a valid lease while requiring Joliet Avionics to do both. These allegations are sufficient to state a plausible class-of-one equal protection claim.

The City next argues that Joliet Avionics's allegations are insufficient to support a reasonable inference of the City's liability under *Monell*. Under *Monell*, a municipality is only liable for a constitutional tort if its policy or custom caused the injury. *J.K.J. v. Polk County*, 960 F.3d 367, 377 (7th Cir. 2020) (en banc). A municipal custom may trigger

*Monell* liability "even though such a custom has not received formal approval through the body's official decisionmaking channels." *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (quoting *Monell*, 436 U.S. at 690-91). To proceed under this "*de facto* custom theory*,*" a plaintiff must allege a series of violations that support an inference that the practice is "so widespread so as to constitute a governmental custom." *Id.*

The allegations in the complaint support a reasonable inference that the City had a de facto custom of unequal treatment of Joliet Avionics and Lumanair. Joliet Avionics has alleged that since February 2019, the City has allowed Lumanair to operate without a valid lease or payment of rent to the City. Meanwhile, Joliet Avionics was paying rent and abiding by the terms of its lease. Additionally, the City permitted Lumanair to violate the Minimum Standards while enforcing those same regulations against Joliet Avionics. Based upon these allegations, Joliet Avionics has raised a plausible claim that the City is liable under *Monell* for its de facto custom of preferential treatment of Lumanair.[1]

For these reasons, the Court denies the City's motion to dismiss Joliet Avionics's section 1983 claim.

## Conclusion

For the foregoing reasons, the Court grants Lumanair's motion to dismiss counts 3, 4, and 5, and denies its motion to dismiss count 1 [dkt. no. 16]. The Court denies the

---

[1] A plaintiff may alternatively establish *Monell* liability by showing that its injury was caused by conduct of a policymaker authorized to act for the municipality. *J.K.J.*, 960 F.3d at 377. It is conceivable that Joliet Avionics could sustain a claim under this theory as well, though it has not sought to do so in the current version of its complaint.

10

City's motion to dismiss count 2 [dkt. no. 14].  The case is set for a telephonic status hearing on August 18, 2020 at 9:55 a.m., using call-in number 888-684-8852, access code 746-1053.  Counsel should wait for the case to be called before announcing themselves.

_____<br>
MATTHEW F. KENNELLY<br>
United States District Judge

Date:  August 1, 2020