## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOLIET AVIONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  19-CV-08507 |
| | ) | |
| LUMANAIR, INC., a Delaware | ) | Judge Nancy L. Maldonado |
| corporation and CITY OF AURORA, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| Defendants. | | |

## <u>JOLIET AVIONICS INC.'S MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES the Plaintiff, JOLIET AVIONICS, INC., by and through its attorneys, Amundsen Davis LLC, and for its Motion for Summary Judgment on liability on Counts I and II of Plaintiff's Fist Amended Complaint, pursuant to Fed. R. Civ. P. 56(c) and LR 56.1 of the United States District Court for the Northern District of Illinois, hereby states as follows:

**Statement of Compliance with Meet and Confer provisions: Counsel for Plaintiff and Counsel for Defendant exchanged correspondence detailing bases for their respective Motions for Summary Judgment and held a Meet and Confer Conference on May 9, 2023.**

## <u>INTRODUCTION</u>

1.      Plaintiff Joliet Avionics, Inc. (hereinafter referred to interchangeably as "J.A." and "Plaintiff") has filed a Complaint at Law seeking damages against the City of Aurora (hereinafter referred to interchangeably as "the City," "Aurora," and "Defendant")  for unlawful class-of-one discrimination (Count I) and breach of contract (Count II). Plaintiff seeks summary judgment in its favor with respect to the City's liability under both Counts.

2.      This matter arises out of Plaintiff's lease of airport space and operation as a Fixed Base Operator ("FBO") at the Aurora Municipal Airport (hereinafter "the Airport") which is

owned and sponsored by Defendant City of Aurora. The 2007 Lease Agreement between Plaintiff and Defendant is subject to all State and Federal laws and subject and subordinate to Minimum Standards for Commercial Activities created by Defendant and enforceable against all FBOs at the Airport. The Minimum Standards specifically provide, "It is the responsibility of the City of Aurora to protect its tenants from unreasonable or unfair competition." Plaintiff, Joliet Avionics, Lumanair, Inc, and Carver Aero are or were at all relevant times FBO tenants of Defendant at the Aurora Municipal Airport.

3. Plaintiff's 2007 lease required Plaintiff, among other obligations, to invest Millions of dollars in buildings owned by the City and to purchase a large corporate hangar and deed the hangar to the City prior to occupying and operating out of the premises. It also required Plaintiff to install an above-ground fuel farm at the expense of approximately One Million Dollars in 2007, as specifically required by the Minimum Standards enforceable against all FBOs.

4. Lumanair, Inc. (hereinafter "Lumanair") was another FBO, that had been operating at the Airport subject to two 1982 leases and one 1999 lease with the City (collectively referred to herein as "the Lumanair Leases") prior to the parties' execution of the 2007 J.A. Lease. Lumanair offered all of the same services as J.A. at the Airport, including flight training, aircraft maintenance, air charter, avionics, and fuel sales for aircraft. The Lumanair Leases by their own terms expired on February 28, 2019 subject to an option to extend to February 29, 2029. On July 22, 2014, the City sent correspondence to Lumanair notifying Lumanair of its failure to comply with certain Minimum Standards, including, *inter alia,* failure to install an above-ground fuel farm. On January 13, 2015, October 27, 2015 and March 8, 2018, the City

sent notices of eviction to Lumanair declaring default under Lumanair's lease based upon, *inter alia,* Lumanair's failure to comply with the Minimum Standards.

5.      On March 25, 2015, Aurora filed a Complaint at Law against Lumanair seeking eviction. Aurora filed four Amended Complaints. The Third and Fourth Amended Complaints were verified and alleged Lumanair breached its lease by failing to comply with the Minimum Standards.

6.      Despite Lumanair's continued failure to comply with the Minimum Standards, and despite its further failure to properly exercise its option to extend the Lumanair Leases, and despite termination of Lumanair's Leases on February 28, 2019, Lumanair continued to operate as a FBO at the Airport until July 31, 2020 *without a written lease* in violation of the first sentence of the Minimum Standards.  Nevertheless, even though Lumanair had still not come into compliance with the Minimum Standards, on August 1, 2020 the City entered into a new lease with Lumanair (the "2020 Lumanair Lease").

7.      On July 27, 2021, the City approved the assignment of the August 1, 2020 Lumanair Lease to Carver Aero, LLC (hereinafter "Carver", now known as "Revv Aviation") which purchased the assets of Lumanair.  Carver is also a FBO, and like Lumanair, offers all of the same airport services at the Airport as Plaintiff.  On January 11, 2022, the City entered into a new lease with Carver.  Carver's intention, which was made known to the City, was to become the sole FBO at the Airport by either purchasing J.A. or "competing" J.A. out of business.

8.      Although Lumanair and plaintiff were similarly situated and offered identical services at the Airport, and although Carver and plaintiff are similarly situated and offer identical services at the Airport, the City's treatment of Lumanair and Carver on the one hand, as opposed

3

to plaintiff on the other, as well as the lease terms the City offered to Lumanair and Carver as opposed to plaintiff, differed in substantial and material ways, including but not limited to:

    i.    Requiring plaintiff to provide and maintain elevators in its 2-story building, while not requiring the other FBOs to install an elevator in their two story building;[1]

    ii.    Requiring plaintiff to purchase environmental liability insurance but not requiring either Lumanair or Carver to purchase such insurance;[2]

    iii.    Allowing one FBO, Lumanair, extended time – 15 years longer than allowed to plaintiff – and the other FBO, Carver, 17 years longer than plaintiff - to install above ground fuel tanks;[3]

    iv.    Allowing Lumanair and then Carver to occupy hangars and office space at the airport with no payment of ground rent (rent on the ground beneath the hangars and office buildings), no payment of rent for occupancy of the hangars and office space from August 1, 2020 (the date of Lumanair's new lease) through July 1, 2021 (the date Lumanair's lease was assigned to Carver) to the present, while plaintiff has been and continues to be required to pay approximately $500,000 per year in rent equivalents to occupy hangars and office space owned by the City;[4]

    v.    Requiring plaintiff to invest its required $9,400,000 in 2007 dollars at the inception of its lease while allowing Carver 12 years to make its putative investment in the FBO it occupies incrementally in 2022 – 2034 dollars;[5]

    vi.    Allowing Carver to use $4,000,000 of its putative $10,000,000 investment to

---

[1] Plaintiff's SMF ¶ 75
[2] Plaintiff's SMF ¶¶ 56, 57
[3] Plaintiff's SMF ¶ 26
[4] Plaintiff's SMF ¶¶ 30, 35, 38, 46
[5] Plaintiff's SMF ¶¶ 10, 40

4

purchase another business at the Airport, while allowing plaintiff no such advantage;[6]

vii.   Allowing Carver to pay only ground rent in the approximate amount of $46,670.002 *per year* beginning July 1, 2024 at the earliest, in the event Carver does not install above-ground fuel tanks, or beginning January 1, 2027 if Carver fails to fully comply with its Construction and Capital Improvements, while requiring plaintiff to pay for all capital improvements to City owned hangars and office space in the approximate amount of $500,000 per year (depending on the current interest rate);[7]

viii.  Requiring plaintiff to purchase a large hanger at a cost of $4,000,000 and requiring plaintiff to convey it to the City at the inception of plaintiff's lease, while making no such requirement of Lumanair or Carver;[8]

ix.    Providing Lumanair with financing through a General Obligation Bond in the initial amount of $4,295,000 to finance the procurement of certain hangars pursuant to an Operating Agreement that gave Lumanair the exclusive right to occupy and lease certain hangars and to retain 98.5% of the gross receipts. And then, when Lumanair was unable to make the required payments on the bond pursuant to the Operating Agreement, the City forgave the balance in the amount of $5,758,378.76, while offering no such financing or debt forgiveness to plaintiff;[9]

x.     Extending the Lumanair August 1, 2020 lease to the year 2050 and the Carver

---

[6] Plaintiff's SMF ¶¶ 40, 43, 44
[7] Plaintiff's SMF ¶¶ 39, 51, 53, 46,
[8] Plaintiff's SMF ¶ 5
[9] Plaintiff's SMF ¶¶ 60, 61, 62, 63, 64, 65, 66

January 2022 lease to the year 2051, but not offering to make the same extension to plaintiff;[10]

xi.    From May 2015 to July 1, 2024, the City has and will require plaintiff to pay $4,041,907.00 more than Lumanair or Carver for the use and occupancy of hangars and office buildings owned by the City; and in terms of present cash value the City will require plaintiff to pay between $11,663,057.00 and $13,184,758.00 more than Lumanair and Carver through the end of plaintiff's lease;[11]

xii.   From August 1, 2020 (the date of Lumanair's new lease) through July 1, 2021 (the date Lumanair's lease was assigned to Carver) through January 1, 2022 (the date of Carver's new lease) to the present, and through at least July 1, 2024 at the earliest, neither Lumanair nor Carver have been required, nor will be required, to pay any amount to the City for ground rent or for occupancy of their hangars and office space, while during the same period of time, plaintiff has been and will be required to pay $1,999,721.00 for occupancy of the hangars and office space used by Plaintiff.[12]

## SUMMARY OF ARGUMENT

9.     Summary Judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue with respect to any material fact and the moving party is entitled to summary §judgment as a matter of law. Fed. R. Civ. P. 56 (c).

---

[10] Plaintiff's SMF ¶ 74
[11] Plaintiff's SMF ¶¶ 76, 77, 78, 79, 80
[12] Plaintiff's SMF ¶¶ 35, 54. 77

10.     The City's preferential treatment of Lumanair and Carver to the detriment of similarly situated J.A. is a clear violation of J.A.'s equal protection rights. *See* 42 U.S.C. §1983. To state a class-of-one equal protection claim, plaintiff must allege facts showing that a government or government official intentionally discriminated against it without a rational basis. *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (citing *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chicago,* 741 F.3d 769, 775 (7th Cir. 2013)). "Normally, a class-of-one plaintiff will show an absence of rational basis by identifying some comparator—that is, some similarly situated person who was treated differently." *Village of Willowbrook v Olech*, 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000); *Miller*, 784 F.3d at 1120 (quoting *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts*., 755 F.3d 839, 845 (7th Cir. 2014)). To be similarly situated, a comparator must be "identical or directly comparable" to the plaintiff "in all material respects." *Miller*, 784 F.3d at 1120 (quoting *LaBella Winnetka, Inc. v. Village Of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010).

11.     Here, Plaintiff can easily satisfy its burden of proof, as J.A. is directly comparable, if not identical, to Lumanair and Carver as the same services are offered by each. The undisputed facts, by way of the documentary evidence and witness testimony, also establishes that J.A. was treated vastly differently than Lumanair by the City and vastly differently that Carver is being treated by the City. Finally, the City has offered no rational basis for the disparity in its treatment.  The only question to be left to the jury with respect to Count I is the amount of damages to which J.A. is entitled.

12.     Additionally, the City's preferential treatment of Lumanair and Carver over J.A. constitutes a breach of the City's obligations pursuant to its 2007 Lease with J.A., including its promise to abide by State and Federal regulations requiring that each fixed base operator shall be

subject to the same rates, fees, rentals and other charges as are uniformly applicable to all other fixed base operators, and violation of the Minimum Standards incorporated in the lease requiring the City to protect its tenants from unreasonable or unfair competition.   Where a contract incorporates all rules, regulations and orders of any federal or state agency having jurisdiction, such rules, regulations and orders are part of the contract which constitute material terms. *See United Airlines, Inc. v. City of Chicago,* 954 N.E. 2d 710, 717, 352 Ill. Dec. 627, 634, 2011 IL App (1st) 102299, ¶20.

13.     J.A. has substantially complied with all material terms of the 2007 Lease, including complying with the Minimum Standards. The City has continually failed to enforce airport rules and regulations contained in the Minimum Standards against Lumanair and Carver while strictly enforcing J.A.'s compliance, and the City has provided extraordinary benefits and accommodations to Lumanair in its August 1, 2020 lease and to Carver in its January 2022 lease, thereby creating an unfair and unreasonable competitive advantage to Lumanair and presently to Carver.  The City knowingly provided terms in the Carver January 2022 lease that would assist Carver in its objective of competing J.A. out of business and becoming the sole FBO at the Airport. Such concerted action with J.A.'s comparator is a clear violation of the protections of 42 U.S.C. §1983 and constitute a breach of the City's lease contract with Plaintiff including but not limited to the City's obligation to charge each FBO substantially the same rates, fees, rentals and other charges as are uniformly applicable to all other fixed base operators and its obligations under the Minimum Standards requiring the City to protect its tenants from unreasonable and unfair competition, all of which were incorporated into the 2007 Lease.  As such, J.A. is entitled to judgment as a matter of law, and this matter should proceed to trial on damages only.

14.    Plaintiff believes it has established, by sworn deposition testimony, it was and is similarly situated with its comparators at the Aurora Airport and that Aurora has treated plaintiff differently than its comparators. Plaintiff further asserts there is no possible rational basis for the difference in treatment by the City of Aurora, and that any attempt by Aurora to establish a rational basis would be pretextual. Finally, the City's preferential treatment of Plaintiff's comparators is the direct and unavoidable result of lease contracts prepared by the City and approved by the City Council.

## MATERIALS IN SUPPORT

15.    J.A. has contemporaneously filed its Statement of Material Facts and its Memorandum of Law in Support of Summary Judgment, and hereby incorporates both in their entirety. The Statement of Facts attaches the following as exhibits:

**Exhibit No. 1 – Aurora's Answer to Plaintiff's Corrected First Amended Complaint**

**Exhibit No. 2 – 2007 Lease between Joliet Avionics and the City of Aurora**

**Exhibit No. 3 – Minimum Standards for Commercial Activities at the Aurora Municipal Airport**

**Exhibit No. 4 – Transcript of deposition of Guy Lieser**

**Exhibit No. 5 – 1982 Lease between Lumanair, Inc., and the City of Aurora**

**Exhibit No. 6 - 1982 Lease between Lumanair and Charles Myler and the City of Aurora**

**Exhibit No. 7 – 1999 Lease between Lumanair and the City of Aurora**

**Exhibit No. 8 – July 22, 2014 correspondence to Lumanair from City of Aurora**

**Exhibit No. 9 – November 19, 2014 correspondence to Lumanair from City of Aurora**

Exhibit No. 10 – January 13, 2015 correspondence to Lumanair from City of Aurora

Exhibit No. 11– Initial Complaint filed by City of Aurora against Lumanair

Exhibit No. 12– Amended Complaint filed by City of Aurora against Lumanair

Exhibit No. 13 – Second Amended Complaint filed by City of Aurora against Lumanair

Exhibit No. 14 – Third Amended Complaint filed by City of Aurora against Lumanair

Exhibit No. 15 – Fourth Amended Complaint filed by City of Aurora against Lumanair

Exhibit No. 16 – Fourth Amendment to Lumanair Leases

Exhibit No. 17 – March 8, 2018 correspondence from Aurora to Lumanair terminating lease

Exhibit No. 18 – October 27, 2015 correspondence from Aurora to Lumanair terminating lease

Exhibit No. 19 – August 1, 2020 Lease between Lumanair and the City of Aurora

Exhibit No. 20 – City of Aurora resolution allowing assignment of Lumanair lease to Carver Aero

Exhibit No. 21 – Resolution of the City of Aurora granting lease to Carver Aero

Exhibit No. 22 – January 1, 2022 Lease between Carver Aero and the City of Aurora

Exhibit No. 23 – August 27, 2022 Report of Plaintiff's Economist Robert Baade

Exhibit No. 24 – General Obligation Bond issued by City of Aurora

Exhibit No. 25 – Operating Agreement naming Lumanair as Agent of Aurora and providing Lumanair with the exclusive use and leasing rights to Aurora Airport Hangars 5, 6 and 7 and

10

**requiring Lumanair to make all payments of principal and interest Due under the Aurora General Obligation Bond (Exhibit No. 24)**

**Exhibit No. 26 – Itemized debt service payments due from Lumanair**

**Exhibit No. 27 – Correspondence from City of Aurora attorney to FAA acknowledging forgiveness of Lumanair's debt in the amount of $5,758,378.76**

**Exhibit No. 28 – Transcript of first deposition of Alex Alexandrou, Chief Management Officer, City of Aurora - April 26, 2022**

**Exhibit No. 29 – Correspondence from Plaintiff to Aurora offering to rent space at the Airport for $8.50 sq. ft.**

**Exhibit No. 30 – Transcript of second deposition of Alex Alexandrou, Chief Management Officer, City of Aurora - July 25, 2022**

**Exhibit No. 31 – Defendant's Response to Plaintiff's Second Rule 36 Request to Admit**

**Exhibit No. 32 – January 30 Report of Plaintiff's Economist, Robert Baade**

**Exhibit No. 33 – Transcript of deposition Bradley Zeman, President of Joliet Avionics (Plaintiff) July 18, 2022**

**Exhibit No. 34 – Aurora's Responses to Plaintiff's First Rule 36 Request for Admission**

**Exhibit No. 35 – Aurora's Responses to Plaintiff's Fifth Rule 36 Request for Admission**

**Exhibit No. 36 – Aurora's Responses to Plaintiff's Fourth Request for Admission**

**Exhibit No. 37 – Transcript of Deposition of Michael Manning, former employee of CL Enterprises and former CFO of Carver Aero – May 24, 2022**

**Exhibit No. 38 – Transcript of Deposition of Peter Limberger, co-founder of CL Enterprises, owner of Carver Aero, d/b/a Revv Aviation – July 7, 2022**

11

**Exhibit No. 39 – Transcript of Deposition of Steve Andras, interim Airport Manager, Aurora Airport – June 8, 2022**

**Exhibit No. 40 – Transcript of the deposition of Scott Fank, Vice-President of Sales, Joliet Avionics (Plaintiff) – July 20, 2022**

**Exhibit No. 41 – Transcript of the deposition of Michael Hodges, one of Plaintiff's FBO Experts – February 16, 2023**

**Exhibit No. 42 - Transcript of the deposition of David Bennett, one of Plaintiff's FBO Experts – February 14, 2023**

**Exhibit No. 43 – Correspondence from City of Aurora attorneys**

**Exhibit No. 44 – *Gary Jet Center v. Gary/Chicago International Airport Authority*, 2014 WL 1329412**

**Exhibit No. 45 – *Asheville Jet, Inc.. v. City of Asheville*, 202 N.C.App 1**

WHEREFORE, Plaintiff JOLIET AVIONICS, INC., respectfully requests this Honorable Court enter summary judgment in its favor and against Defendant the CITY OF AURORA, as to Defendant's liability with respect to Counts I and II of Plaintiff's Corrected First Amended Complaint, for all attorney fees and costs expended by Plaintiff and for such further relief as this Court deems just.

By: JOLIET AVIONICS, INC.

/s/Thomas P. Scherschel
By: One of its Attorneys

Thomas P. Scherschel
Amundsen Davis LLC
3815 East Main Street, Suite A-1
St. Charles, IL   60174
(630) 587-7912
Attorney. No. 6184669
Tscherschel@amundsendavislaw.com

12